**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Joseph Martin Efezokhae,

          Plaintiff,

v.

Rocket Mortgage, LLC,

          Defendant.

No. CV-23-01982-PHX-SMB

**ORDER**

      Pro Se Plaintiff Joseph Martin Efezokhae filed this lawsuit asserting disability discrimination and wrongful termination claims against Defendant Rocket Mortgage, LLC's ("Rocket Mortgage") following an alleged failure to provide reasonable accommodations from December 2020 to October 2021 and his ensuing termination (*see* Doc. 1-5). Rocket Mortgage now moves for summary judgment or in the alternative partial judgment on the pleadings (Doc. 51). Additionally, the parties filed six other motions essentially stemming from that Motion that the Court will address in turn, which include a cross-motion for summary judgement and motions to strike, to assert affirmative defenses, for additional discovery, and for accommodations. (*See* Doc. 75 at 38–41; Doc. 80; Doc. 81; Doc. 84; Doc. 85; Doc. 90.)

      This case involves the analysis sensitive topics, of which Efezokhae has aptly conveyed his emotional sensitivities. The disposition, however, involves issues of law and fact as presented by the parties—it does not reflect an insensitivity to the struggles Efezokhae has faced. Judges are oath-bound to apply the Constitution and laws of the

1   United States faithfully and impartially.  So, having reviewed the parties' filings, briefings,

2   and the applicable law, the Court will grant Rocket Mortgage's Motion for Summary

3   Judgment (Doc. 51).  Next, the Court will grant Rocket Mortgage's Motion to Strike (Doc.

4   80) regarding Efezokhae's Cross-Motion for Summary Judgment (Doc. 75 at –38–41) but

5   deny it otherwise.  The Court will also grant Rocket Mortgage's Motion to Strike (Doc.

6   90), striking ECF Nos. 81, 82, 83, and 87.   Additionally, the Court will deny all

7   Efezokhae's remaining Motions (Doc. 84; Doc. 85).

## I.    BACKGROUND

### A. Factual Background

Efezokhae, an African American individual, suffers from various mental ailments but mainly anxiety and depression and has a history of asthma that can be exacerbated by his anxiety.  (Doc. 1-5 at 14; *see also* Doc. 52-4 at 7.)  His anxiety disorder has limited his ability to care for himself, concentrate, and interact with others at times.  (*See, e.g.*, Doc. 52-4 at 7.)

Efezokhae applied for employment with Rocket Mortgage, a national mortgage lender.  (Doc. 52 at 1 ¶ 1; Doc. 75-1 at 45, 47.)  In March 2020, he passed an initial screening and participated in a virtual job tryout.  (*Id.*)  Efezokhae suffered an asthma attack during the onboarding process that caused a delay in his application.  (*Id.* at 46, 55.)  Efezokhae eventually accepted the job in August 2020, he began working remotely as an Associate Banker within the mortgage banking department.   (Doc. 52-1 at 29–32.)  Efezokhae remained remote for the entirety of his employment with Rocket Mortgage.  (Doc. 52-2 at 81.)

In his employment contract, Efezokhae agreed to abide by Rocket Mortgage's policies and guidelines regarding his conduct and performance.  (*See id.* at 30.)  Through these guidelines and policies, Rocket Mortgage sought to foster a "culture of excellence," which involved maintaining positive behavior, giving and receiving feedback, responding to issues and clients with urgency, and coach underperforming team members.  (Doc. 52 at 8 ¶¶ 47–48; *see also* Doc. 52-1 at 27.)  The policies also included guidelines on how to

present and format documents and how to communicate and present at meetings. (*See* Doc. 52-1 at 10–12.)

Around December 2020 or January 2021, Efezokhae started expressing concerns about his growth within the role, work-life balance, and clashes with his director. (Doc. 52-2 at 17; Doc. 75-1 at 70.) Come March 2021, Efezokhae began directly complaining about long work hours, leading management to place him on a different team in the banking department. (Doc. 52 at 2 ¶ 4; Doc. 52-3 at 2, 9; Doc. 75-1 at 71, 78.) Efezokhae had only indicated he had asthma up to this point but no other disabilities. (Doc. 52-2 at 12–13.)

Shortly after his transfer, Efezokhae sought a transfer into the underwriting department, complaining of the hours and work-life balance again. (Doc. 52 at 2 ¶ 5; Doc. 52-3 at 6.) In late March 2021, Rocket Mortgage allowed Efezokhae the second transfer with a start date set for April 23, 2021 to allow time for necessary trainings. (Doc. 52-3 at 11; *see also* Doc. 52-1 at 3.) Rocket Mortgage's operations required it to shift other candidates into the training class, filling up the available slots and requiring a delay for Efezokhae's start date. (Doc. 52-1 at 3; Doc. 52-3 at 22; *see also* Doc. 88-3 at 211.) On April 9, 2021, Rocket Mortgage notified Efezokhae about the delay. (*Id.*) Efezokhae became depressed and angry and sought medical care. (Doc. 52-3 at 22; Doc. 75-2 at 2.) Efezokhae messaged Rocket Mortgage's leave specialist insinuating that the decision to push his start date was racially motivated. (Doc. 75-2 at 3.) On April 10, 2021, Efezokhae sent his manager a doctor's note, dated April 9, 2021, recommending that he abstain from working for a week due to his asthma. (Doc. 75-2 at 2.) Efezokhae also started inquiring about the availability of FMLA or short-term disability leave and submitted various doctor's notes to qualify for disability leave. (Doc. 52 at 3 ¶ 15; Doc. 52-2 at 2–3; Doc. 52-3 at 30; Doc. 75-1 at 81; Doc. 75-2 at 1, 3–4; *see also* Doc. 88-3 at 139.) Efezokhae was approved for short-term leave, which began on April 12, 2021 and continued until the underwriting role became available. (Doc. 52-2 at 2; *see also* Doc. 88-3 at 133–35.)

On April 28, 2021, Efezokhae sent a letter to Rocket Mortgage detailing the discrimination he believed he experienced after his transfer was delayed. (Doc. 52 at 3

¶ 10; Doc. 52-3 at 22–24.)  In the letter, Efezokhae noted that he was suffering from asthma, PTSD, depression, and anxiety due to and exacerbated by his employment.  (*Id.*) Efezokhae also accused Rocket Mortgage of failing to make appropriate accommodations after not providing a guaranteed start date, an hour for lunch, and maximum hours capped to sixty hours per week.  (*Id.*)  Additionally, Efezokhae vaguely accused Rocket Mortgage of failing to recognize the challenges he has faced due to his race and disabilities.  (*Id.*) Rocket Mortgage responded by requesting additional information to investigate the accusations.  (Doc. 52-3 at 26–28.)  Efezokhae refused to speak about the details of the discrimination, believing it would force him to relive the trauma he supposedly endured, and instructed Rocket Mortgage to rely on the documents he has already provided.  (*Id.*; *see also* Doc. 52-2 at 50–51; Doc. 75-2 at 10–11.)

Thereafter, around mid-May 2021, Efezokhae requested indefinite accommodations for his work, asking that his hours not exceed fifty per week and an hour break on Tuesdays for counseling.  (Doc. 75-2 at 12–22.)  He also sent Rocket Mortgage documents detailing his generalized anxiety disorder and depression.  (*Id.*)  The documents included a fitness for duty certification, submitted by his therapist, for his return to work, noting that his impairment restricted him to a fifty-hour workweek with the length determined according to an "adjustment period." (Doc. 75-2 at 17.)   Rocket Mortgage informed Efezokhae that it would likely only approve temporary accommodations based on the adjustment period and because a longer term would require additional paperwork.  (Doc. 88-3 at 148, 153, 177; *see also* Doc. 75-2 at 18.)  Efezokhae responded, asking for a 2.5-year period but accepted for the six-month term and indicated he would work around the counselling sessions.  (Doc. 88-3 at 169–70, 176–78; *see also* Doc. 75-2 at 18.)  Efezokhae would go on to complete the training and to start in the underwriting role on July 16, 2021.  (*See* Doc. 75 at 2.)

On August 13, 2021, Rocket Mortgage reached out to Efezokhae about one his accommodation requests.  (Doc. 88-3 at 106; *see also* Doc. 75-2 at 31.)  After Efezokhae did not respond for two weeks and Rocket Mortgage followed up, Efezokhae refused to

answer any questions regarding an accommodation and asked for any communications to go through his therapist.  (Doc. 88-3 at 204–05.)

On September 14, 2021, one of Efezokhae's supervisors had reached out to him about missing meetings.  (Doc. 75-2 at 44.)  That same day, Efezokhae submitted a packet for his accommodation requests, where he asked to work from home permanently and to participate on video calls using only audio.  (Doc. 52 at 4 ¶ 19; Doc. 52-4 at 2.)  The packet included supporting documents detailing his generalized anxiety disorder, which limited his ability to concentrate and interact with others and would require him to temporarily remain remote.  (Doc. 52-4 at 5–9.)  The packet also included an authorization for Rocket Mortgage to contact Efezokhae's medical providers for medical records to evaluate his request.  (Doc. 75-2 at 37.)  Efezokhae admitted that he never provided any doctor's recommendation indicating his impairment required being off screen during meetings. (Doc. 52-2 at 30–32.)

On October 7, 2021, Efezokhae sent an email to a client that caught his supervisor's attention, in which he included a new disclaimer that read:

Ps - My preferred contact method: Email

The Why Behind It? - Email allows me time to research your concern so that we're always moving forward towards your goal! If you let me know in a concise email, I can work wonders with that! If you have to call, just remember, my time as an underwriter is scarce, so the more time I am underwriting the more time I have to address your concern (in the order it is presented). Thank you for understanding. : )

(Doc. 52-5 at 2–7; *see also* Doc. 75 at 6.)  Efezokhae's supervisor instructed him to remove the disclaimer because his job required him communicate with clients directly and over the phone.  (Doc. 52-5 at 5; Doc. 52 at 6 ¶ 37; Doc. 75 at 6; Doc. 75-2 at 25.)  Efezokhae asked for an explanation as to why removal was necessary but refused to communicate with the supervisor and requested that he only speak with a team leader.  (Doc. 52-5 at 3–4.)  The supervisor explained that the disclaimer conflicted with the company's culture and that it would give clients the wrong impression.  (*Id.* at 2; *see also* Doc. 52 at 8 ¶¶ 47–49; Doc. 75 at 6.)  During this time and in the weeks preceding, Efezokhae pushed back on receiving

feedback, complaining that the critiques and guidance exacerbated his condition and implied that he was stupid.  (Doc. 52-2 at 24; Doc. 52-4 at 19–23; Doc. 52-5 at 2–13, 18–20.)

The supervisor informed Efezokhae that she was setting a meeting with him, herself, and the team leader.  (Doc. 52-5 at 2.)  Efezokhae refused to participate and reiterated he would only speak with the team leader.  (*Id.* at 9–10.)  On October 15, 2021, Efezokhae met with team leader.  (*Id.* at 15.)  On October 18, he proceeded to email his supervisor recapping the meeting, noting that he was struggling with tasks, and was suffering from a mood disorder but did not intend no harm or to offend her.  (*Id.*)  That same day, Rocket Mortgage approved a temporary accommodation for remote work for thirty days but denied permitting Efezokhae to participate in meetings using only audio.  (Doc. 52-4 at 11–12.)  Rocket Mortgage informed Efezokhae that it had an expectation that team members participate and collaborate with colleagues on video calls.  (*Id.*)

Rocket Mortgage terminated Efezokhae for insubordination on October 22, 2021.  (Doc. 52 at 9 ¶ 54; Doc. 52-6 at 2.)  In the days following, Efezokhae emailed various team leaders threatening to file ADA complaints and stating "[p]lease don't force my hand (it was never meant for you)."  (Doc. 52-6 at 11–14.)

During this litigation, Rocket Mortgage discovered Efezokhae made entries in its internal notes system, DRIVE.  (Doc. 52-4 at 27; Doc. 52-5 at 22–25.)  In the weeks preceding his termination, Efezokhae wrote about his anger, losing sleep, the abuse and discrimination he believed he was experiencing, and frustration in gaining accommodations.  (Doc. 52-5 at 22–25.)  Efezokhae admitted that these entries were not entirely private and wanted someone to discover them.  (Doc. 52 at 8 ¶ 51; Doc. 75 at 6.)  Rocket Mortgage also discovered Efezokhae's private journal entries where he wrote expletives directed towards Rocket Mortgage and its handling of his transfer and requested accommodations.  (*See* Doc. 52-7 at 11–17.)

### B. Procedural Background

Efezokhae filed a Charge of Discrimination with the Equal Opportunity

Commission ("EEOC") on February 15, 2022, and received a right to sue letter on June 23, 2022. (Doc. 88-3 at 2, 127.) Efezokhae filed an initial Complaint in the Superior Court of Arizona on September 21, 2022, alleging disability discrimination under the Arizona Civil Rights Act ("ACRA") (Count I) and wrongful termination under the Arizona Employment Protection Act ("AEPA") (Count II). (Doc. 1-4 at 4, 9–10.) Efezokhae amended his Complaint to allege disability discrimination under the Americans with Disabilities Act ("ADA") and Title VII of the Civil Rights Act of 1964 (Count III). (Doc. 1-4 at 18–21.) Rocket Mortgage removed the action to this Court. (Doc. 1.) The parties filed various motions and coinciding briefings now pending before the Court, outlined below.

First, Rocket Mortgage moves for partial summary judgment and judgment on the pleadings on all claims. (Doc. 51.) This Court previously issued two Orders striking Efezokhae's responsive documents for failure to comply with the Federal Rules and Local Rules of Civil Procedure (*see* Doc. 64 (striking ECF Nos. 54–59, 62–63); Doc. 74 (striking ECF Nos. 65–69)). The Court allowed Efezokhae a final opportunity to file a compliant Response. (Doc. 74.) Efezokhae timely filed his Response thereafter. (Doc. 75 at 1–10, 24–41.) Within Efezokhae's Response, he also tacked on a Cross-Motion for Summary Judgment and Request for Immediate Relief. (*See* Doc. 75 at 38–41.) Rocket Mortgage filed a Reply. (Doc. 88.)

Second, Rocket Mortgage also moves to strike Efezokhae's Response, faulting him for failure to comply with governing rules again. (Doc. 80.) Thereafter, Efezokhae made a slew of filings. Efezokhae filed a Response to the Motion to Strike (Doc. 86) and a notice of "Case Law" supporting that Response (Doc. 87). Rocket Mortgage filed a Reply. (Doc. 89).

Third, Efezokhae filed a "Motion or Affirmative Defenses" (Doc. 81), a "Declaration in Support of Rule 56(d), Affirmative Defenses" (Doc. 83), a "Case Law Synopsis" in support of his Declaration (Doc. 82). Fourth, Efezokhae filed a Motion for Accommodations and Additional Time to Respond. (Doc. 85.) Fifth, Efezokhae filed a Motion Requesting Additional Discovery. (Doc. 84.) Rocket Mortgage filed a Response

1    to both the Motion for Accommodations and Motion Requesting Additional Discovery.

2    (Doc. 92; Doc. 91.)

3        Lastly, Rocket Mortgage moves to strike Efezokhae's following filings: ECF Nos.

4    81 (Motion for Affirmative Defenses), 82 (Case Law Synopsis), 83 (Declaration), and 87

5    (Case Law Synopsis).  (*See* Doc. 90.)

6    **II.    LEGAL STANDARDS**

7        **A. Summary Judgment**

8        Summary judgment is appropriate in circumstances where "there is no genuine

9    dispute as to any material fact and the movant is entitled to judgment as a matter of law."

10   Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of a case under

11   the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

12   Factual disputes are genuine when the evidence could allow a reasonable jury to find in

13   favor of the nonmoving party.  *Id.*  "A party asserting that a fact cannot be or is genuinely

14   disputed must support the assertion by . . . citing to particular parts of materials in the

15   record" or by "showing that an adverse party cannot produce admissible evidence to

16   support the fact."  Fed. R. Civ. P. 56(c)(1)(A)–(B).  Additionally, the Court may enter

17   summary judgment "against a party who fails to make a showing sufficient to establish the

18   existence of an element essential to that party's case, and on which that party will bear the

19   burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A principal

20   purpose of summary judgment is "to isolate and dispose of factually unsupported claims."

21   *Id.* at 323–24.

22       When considering a motion for summary judgment, a court must view the evidence

23   in the light most favorable to the nonmoving party and draw reasonable inferences in his

24   favor. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986);

25   *Anderson*, 477 U.S. at 255.   Additionally, the Court does not make credibility

26   determinations or weigh the evidence.  *Id.* at 253.  The determination of whether a given

27   factual dispute requires submission to a jury is guided by the substantive evidentiary

28   standards that apply to the case.  *Id.* at 255.  The burden initially falls with the movant to

demonstrate the basis for a motion for summary judgment, and "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323.  If this initial burden is not met, the nonmovant does not need to produce anything even if they would have the ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). However, if the initial burden is met by the movant, then the nonmovant has a burden to establish that there is a genuine issue of material fact. *Id.* at 1103.  The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Zenith Radio Corp.*, 475 U.S. at 586.  Bare assertions alone do not create a material issue of fact, and "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 247–50 (citations omitted).

### B.  Judgement on the Pleadings

Under Federal Rule of Civil Procedure 12(c), "a party may move for judgment on the pleadings" after the pleadings are closed "but early enough not to delay trial."  A motion for judgment on the pleadings can be brought to challenge the legal sufficiency of the opposing party's pleading. *Westlands Water Dist. v. United States*, 805 F. Supp. 1503, 1506 (E.D. Cal. 1992).  The motion should only be granted if "the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989).  Despite the difference in timing between the two motions, a Rule 12(c) motion is functionally identical to a Rule 12(b)(6) motion to dismiss for failure to state a claim, and the same legal standard applies to both motions. *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

### C.  Strike Pleadings

On its own or by motion by either party, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those

issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). These motions are generally disfavored, "as they involve a drastic remedy and may be used as a 'dilatory or harassing tactic.'" *J & J Sports Prods. Inc. v. Mosqueda*, No. CV-12-0523 PHX DGC, 2013 WL 951366, at *1 (D. Ariz. Mar. 12, 2013) (citation omitted). The motions are generally denied absent a showing of prejudice to one of the parties or if the pleadings have no relation to the controversy. *Colonial Sav., FA v. Gulino*, No. CV-09-1635-PHX-GMS, 2010 WL 1996608, at *9 (D. Ariz. May 19, 2010) (noting "[w]here the Court is uncertain whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied, leaving an assessment of the sufficiency of the allegations for adjudication on the merits").

## III.    DISCUSSION

### A. Efezokhae's Motion for Additional Discovery

Federal Rule of Civil Procedure 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). Rule 56(d) creates "a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002). "The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists and that it would prevent summary judgment." *Okabayashi v. Travelers Home & Marine Ins. Co.*, No. CV-17-03612-PHX-DJH, 2019 WL 1059982, at *3 (D. Ariz. Mar. 6, 2019) (citing *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001)). The moving party must show: "(1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). Thus, a party requesting relief must "make clear what information is sought

1   and how it would preclude summary judgment." *Nicholas v. Wallenstein*, 266 F.3d 1083,

2   1088–89 (9th Cir. 2001).  "Failure to comply with these requirements 'is a proper ground

3   for denying discovery and proceeding to summary judgment.'" *Family Home & Fin. Ctr.*,

4   525 F.3d at 827 (quoting *Campbell*, 138 F.3d at 779).

5       Efezokhae moves for additional discovery but fails to make the requisite showing.

6   (Doc. 84.)  First, Efezokhae argues that he is missing the deposition testimony of key

7   witnesses.   Yet, Efezokhae does not identify any specific facts that are essential to resist

8   summary judgment.   Efezokhae simply makes conclusory statements that "exclusion

9   leaves unresolved factual disputes" open and that "[t]heir testimony is critical to resolving

10  material factual disputes." (*See* Doc. 84 at 7–8.)  Efezokhae further blames his former

11  counsel for failing to secure the necessary depositions.  (*Id.*)  But the Court granted an

12  extension of time to complete discovery after his former counsel's withdrawal.  (*See* Doc.

13  45; Doc. 46.)  Efezokhae filed a Declaration, but it provides no relevant information to his

14  purported entitlement to additional discovery and appears to assert irrelevant legal

15  argument. (*See* Doc. 83.)  Thus, Efezokhae has failed to adequately explain what he seeks

16  to uncover and why he did not seek the discovery for which he now complains is missing.

17      Next, Efezokhae complains of deceptive deposition practices, which he argues

18  include: (1) a technical error in the deposition transcript where it lists the wrong location;

19  (2) the presence of a video camera at the deposition exacerbated his mental health

20  challenges; and (3) he should have received the written deposition questions prior to the

21  deposition for him to respond in writing.  (Doc. 84 at 7; *see also* Doc. 75-1 at 27, 28.)  The

22  first issue relates to an irrelevant mistake in listing the location, but the deposition did in

23  fact occur.  Regarding the second and third issue, Efezokhae has not explained the authority

24  for an entitlement to these conditions or lack thereof.  Further, Efezokhae appears to take

25  issue with Rocket Mortgage's counsel's demeanor and tactics in his own deposition.

26  Efezokhae does not provide an actual justifiable reason for his failure to depose any other

27  relevant individuals to garner the facts necessary to oppose summary judgment.  (*See* Doc.

28  83 at 4.)

1    Finally, Efezokhae makes additional arguments that his "evidence binder" reveals
2    discrepancies in Rocket Mortgage's records, which presumably refers to his attached
3    exhibits to his Reply.  (Doc. 75.)  Efezokhae, however, provides no context for how these
4    documents show that his inability to conduct discovery or the reason for failing to seek
5    such discovery.  (*See* Doc. 84 at 8; *see also* Doc. 75-1 at 6, 69, 72, 76; Doc. 75-2 at 46, 48,
6    49, 21, 22.)  Therefore, Efezokhae has failed to explain how additionally discovery would
7    preclude a grant of summary judgment, thus the Court will deny his Motion (Doc. 84).

8    **B.  Rocket Mortgage's Motions to Strike**

9         1.  <u>Motion to Strike Efezokhae's Response</u>

10    Rocket Mortgage moves to strike Efezokhae's Response to its Motion for Summary
11    Judgment, Controverting Statement of Facts, and attached Exhibits filed at ECF No. 75.
12    (Doc. 80.)   Additionally, Rocket Mortgage moves to strike the Response because it
13    improperly includes a Cross-Motion for Summary Judgment and Request for Immediate
14    Relief (the "Cross-Motion").  (*Id.; see also* Doc. 75 at 38–41.)

15    The Court first addresses that Cross-Motion.  The deadline to file dispositive
16    motions was August 25, 2024.  (Doc. 18 at 4.)  Efezokhae did not seek an extension of this
17    deadline prior to filing his Response on November 21, 2024.  Additionally, the Court
18    previously struck Efezokhae's first attempt at moving for summary judgement as untimely.
19    (*See* Doc. 64 (striking Docs. 54 to 59).)  The deadline to file has passed and the filing is
20    improper.  Therefore, the Court will grant Rocket Mortgage's Motion in part and strike the
21    Cross-Motion.  (*See* Doc. 75 at 38–41).

22    Next, the Court notes that Efezokhae filed his Response, Controverting Statement
23    of Facts, and the Exhibits as a single filing contravening LRCiv. 56.1(b) and the Court is
24    cognizant that they do not comply with LRCiv. 7.1(b) as they include improper font sizes
25    and margin widths.  (*See* Doc. 75 at 1–11, 24–41.)   Additionally, his Controverting
26    Statement of Facts paragraphs are not set in proper form and include additional argument
27    that violates LRCiv. 7.2(m)(2), 56.1(b).  (*Id.* at 1–11.)  This Court previously cautioned
28    that failure to comply with the Federal and Local Rules of Procedure could result in a

summarily granting summary judgment. (Doc. 74 at 3.) Efezokhae appears to have at least attempted to address many of the pitfalls the Court previously outlined, i.e., no longer citing to a flash drive and Google documents in his Response. (*See, e.g.*, *id.* at 2; Doc. 75 at 2.)

The Court cautions Efezokhae against further improper filings, but whether the Court strikes his Response is not dispositive to this matter. Rocket Mortgage aptly replied to Efezokhae's Response. (*See* Doc. 88.) In the interest of deciding the Motion for Summary Judgment on the merits and not on technicalities, and with no prejudice to Rocket Mortgage resulting, the Court declines to strike Efezokhae's Response, Controverting Statement of Facts, or attached Exhibits. The Court proceeds, however, with the caveat that it will not address improper argument asserted outside of Efezokhae's Response and will address only the facts he adequately cites.

2.    Motion to Strike ECF Nos. 81, 82, 83, and 87

Rocket Mortgage moves to strike ECF Nos. 81, 82, 83, and 87 as improper, duplicative, or untimely. (Doc. 90.) The Court first addresses ECF No. 81.

Efezokhae filed the instant Motion for Affirmative Defenses on December 12, 2024. (Doc. 81.) Rocket Mortgage has not asserted any counterclaims against Efezokhae. As Rocket Mortgage argues (Doc. 90 at 3–4), any purported affirmative defenses are irrelevant and improper. To the extent the Court construes the Motion as an addition to his Response (Doc. 75), he failed to assert any of the arguments contained therein in a timely manner within his Response. The deadline to file dispositive motions was August 25, 2024. (Doc. 18 at 4.) Efezokhae did not seek an extension of this deadline prior to filing his Response on November 21, 2024. Additionally, the Court previously struck Efezokhae's first attempt at moving for summary judgement as untimely. (*See* Doc. 64 (striking ECF Nos. 54–59).) The deadline has passed. Therefore, the Court will strike Efezokhae Motion for Affirmative Defenses (Doc. 81). LRCiv. 7.2(m)(1).

Next, the Court addresses ECF No. 83. There, Efezokhae filed a "Declaration in Support of Rule 56(d), Affirmative Defenses." (*See* Doc. 83.) The Declaration merely reasserts Efezokhae's improper and untimely arguments asserted in his Motion for

Affirmative Defenses (Doc. 81) and Response to Rocket Mortgage's Motion for Summary Judgment (*see* Doc. 75 38–41).  (Doc. 83 at 3–6.)  Further, the Declaration is irrelevant to Rocket Mortgage's Motion to Strike and pertains to summary judgment.  In that regard, the Declaration is inadequate to oppose summary judgment as it merely asserts legal conclusions and bare allegations without detailed facts and supporting evidence.  *See, e.g.*, *United States v. Shumway*, 199 F.3d 1093, 1104 (9th Cir. 1999) (noting conclusory affidavits without sufficient factual enhancement are not cognizable to establish a genuine dispute of fact); *see also* Fed. R. Civ. P. 56(d).   The filing is also a procedurally improper attempt to supplement his Response, or alternatively an improper sur reply, absent prior leave from the Court.  Therefore, the Court will strike ECF No. 83.

Lastly, the Court addresses ECF Nos. 82 and 87.  There, Efezokhae provides various case synopses in support of his Motion for Affirmative Defenses (Doc. 81), Motion for Accommodations (Doc. 85), and Motion Requesting Additional Discovery (Doc. 84).  As Rocket Mortgage argues (Doc. 90 at 2–3), nothing in the Federal or Local Rules of Civil Procedure permit these addition arguments and citations.  *See* Fed. R. Civ. P. 12(f), 56(d).  Notably, these citations merely duplicate citations already provided for in the respective briefing.  (*Compare* Doc. 82, *with* Doc. 84, *and* Doc. 85; *compare* Doc. 87 *with* Doc. 86.) The filings are redundant and improper.  Accordingly, the Court will strike ECF Nos. 82 and 87 and grant Rocket Mortgage's Motion in full.  (*See* Doc. 90)

## C.  Rocket Mortgage's Motion for Summary Judgment

### 1.  Efezokhae's Racial Discrimination Claim

Rocket Mortgage argues Efezokhae's Title VII racial discrimination claim is untimely as he failed to assert it within ninety days of receiving the right-to-sue letter of the EEOC.  (Doc. 51 at 7–8.)  Alternatively, Rocket Mortgage argues that Efezokhae fails to state a claim because his claim is based on purported disability discrimination, not race. (*Id.*)

Title VII prohibits an employer from discriminating against an employee based on his race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a).  As the Ninth

Circuit has succinctly stated: "Title VII does not encompass discrimination on the basis of disability." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1093 n.8 (9th Cir. 2008). Efezokhae makes obscure references to his race in his factual allegations, but those references have not materialized into a legal claim. In Count III, where Efezokhae asserts Title VII discrimination, he premises his legal theory entirely on alleged disability discrimination, which does not fall under Title VII's protections. *See id.* And even considering Efezokhae's Response, he fails to address Rocket Mortgage's arguments on this claim. Additionally, Rocket Mortgage is correct that Efezokhae failed to assert the Title VII claim within ninety days of receiving the right-to-sue letter. *See* 42 U.S.C. § 2000e-5(f)(1). Efezokhae's failure to respond has provided the Court with no basis to relieve him from the time bar, and he has seemingly abandoned his Title VII claim. Therefore, Efezokhae has failed to state a Title VII claim, nor has he established a genuine dispute of fact. Thus, Rocket Mortgage is entitled to judgment on the pleadings and summary judgment.

### 2. Efezokhae's Disability Discrimination Claims

Efezokhae appears to allege ADA and ACRA violations under two theories: a failure to accommodate claim and a termination-based discrimination claim. (Doc. 1-5 at 18–21.) Rocket Mortgage argues it is entitled to summary judgment on both claims. (Doc. 51 at 8–14.)

The ADA and ACRA provide that no employer "shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); Ariz. Rev. Stat. § 41-1463(B); *see also Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996) (noting disability discrimination claims are generally based on allegations that (1) the defendant failed to provide a requested reasonable accommodation, (2) failed to engage in an interactive process to identify a possible reasonable accommodation, or (3) terminated the employee because of the disability). The ADA and ACRA are interpreted according to the same legal standards. *Nicolini v. Arizona Bd. of Regents*, No. CV-20-01798-PHX-

GMS, 2021 WL 1597898, at *7 (D. Ariz. Apr. 23, 2021).

### i. Failure to Accommodate Claim

An employer engages in unlawful discrimination under the ADA and ACRA by not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability. 42 U.S.C. § 12112(b)(5)(A); Ariz. Rev. Stat. § 41-1463(F)(4); *Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018) ("The ADA treats the failure to provide a reasonable accommodation as an act of discrimination if the employee is a qualified individual[.]"). A qualified individual is a person who, with or without a reasonable accommodation, can perform the essential functions of the employment position he holds or desires. *See* 42 U.S.C. § 12111(8); Ariz. Rev. Stat. § 41-1461(12).

### a. Qualified Individual

Rocket Mortgage argues Efezokhae is not a qualified individual because, with or without a reasonable accommodation, he could not perform the following essential functions: (1) participate on video during meetings and talking to clients over the phone; (2) work in the office; and (3) receive feedback on his performance. (Doc. 51 at 9.) As Rocket Mortgage points out, Efezokhae failed to respond by showing he could perform these essential functions. (Doc. 88 at 2–3; *see also* Doc. 75 at 24–41.)

The burden falls on the employee to demonstrate that he can perform the essential functions of a job with or without a reasonable accommodation. *Kennedy*, 90 F.3d at 1481. But an employer has the burden of establishing what job functions are essential. *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012). A job function may be essential if: (i) the reason the position exists is to perform that function; (ii) there are a limited number of employees available who can perform that function; or (iii) the function requires specialization or expertise. 29 C.F.R. § 1630.2(n)(2). Evidence of what is essential includes the employer's judgment, written job descriptions, and the amount of time spent performing the function. 29 C.F.R. § 1630.2(n)(3); *see also* 42 U.S.C. § 12111(8). Such evidence, however, is not conclusive: "an employer may not turn every

condition of employment which it elects to adopt into a job function, let alone an essential job function, merely by including it in a job description." *Rohr v. Salt River Project Agric. Imp. & Power Dist.*, 555 F.3d 850, 864 (9th Cir. 2009).

Aside from the necessity of client communications, it is not clear to the Court that Rocket Mortgage has carried its burden in establishing these functions are essential. As to the second proffered essential function, Efezokhae was never under an obligation to return to the office during his employment. For the third, accepting feedback and coaching does not necessarily equate to performing a job function. Rocket Mortgage cites to a guidance manual indicating character traits it emphasizes the importance of giving and receiving feedback, and Efezokhae being unreceptive to feedback. (Doc. 51 at 10; Doc. 52-1 at 8.) But without further development, what appears as friction in communicating lacks a tie to Efezokhae's inability to perform an essential function. Additionally, Rocket Mortgage cites *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 462–63 (6th Cir. 2001) for the proposition that accepting feedback is always an essential function. That case, however, is inapposite as it addresses alleged racial discrimination after an employee was discharged following him taking disability leave to cope with stress and based on a doctor's fitness-for-duty recommendation. *See Wade*, 259 F.3d at 457, 462–63. In *Wade*, dealing with coworkers and accepting criticism were among the many circumstances the court considered to conclude the employee could not perform the essential functions of the job, and therefore the racial discrimination claim failed. *Id.* at 462–63. The case is unpersuasive here.

Regarding the first proffered function, there is no dispute that an essential function of the underwriting role involves directly communicating with clients over the phone. (*See* Doc. 52 at 6 ¶ 37; Doc. 75 at 6.) Efezokhae sought accommodations for permanent remote status to remain off camera during meetings. Rocket Mortgage has not pointed the Court to any evidence explicitly requiring employees to use video during meetings. (*See* Doc. 51 at 9, 12; Doc. 52 at 8 ¶¶ 47–48.) Notably, Rocket Mortgage's guidance manual incorporations instructions regarding those participating in meetings over the phone, i.e.,

presumably not on camera.  (*See* Doc. 52-1 at 11.)  Rocket Mortgage has failed to articulate how being on video during meetings is an essential function of Efezokhae's job.

With or without the accommodations for remote status or remaining off video, Efezokhae, however, has undisputedly demonstrated that he refused to communicate with clients over the phone.  *See* 42 U.S.C. § 12111(8).  Efezokhae did not expressly request an accommodation that would allow him to only communicate with clients via email, but even so, such an accommodation would effectively exempt him from an essential function of the job.  *See, e.g.*, *Samper*, 675 F.3d at 1240 (refusing to allow a plaintiff to ask for a reasonable accommodation that exempts her from an essential function).  Therefore, Efezokhae is not a "qualified individual" because the accommodations he sought do not remedy his unrefuted inability and unwillingness to perform an essential function of the underwriting role.  This alone warrants granting Rocket Mortgage's Motion for Summary Judgment on this claim.  But the Court will also analyze the reasonableness of the accommodations.

### b.  Reasonable Accommodations

Next, Rocket Mortgage argues that it provided Efezokhae with reasonable accommodations for his unreasonable requests, therefore his failure to accommodate claim fails.  (Doc. 51 at 11–13.)

Discrimination based on a disability includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."  42 U.S.C. § 12112(b)(5)(A); *see also* Ariz. Rev. Stat. § 41-1463(F)(4).  To defeat summary judgment, a plaintiff need only show than an accommodation seems reasonable on its face, i.e., "ordinarily or in the run of cases."  *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401–02 (2002).  "Once the [employee] has made this showing, the [employer] then must show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances."  *Id.*  "The

Ninth Circuit has held that notifying an employer of a need for an accommodation triggers a duty to engage in an 'interactive process' through which the employer and employee can come to understand the employee's abilities and limitations, the employer's needs for various positions, and a possible middle ground for accommodating the employee." *Snapp v. United Transportation Union*, 889 F.3d 1088, 1095 (9th Cir. 2018). An employer is not obligated to provide an employee with the accommodation he requests or prefers, the employer need only provide some reasonable accommodation. *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002).

The parties do not dispute that Efezokhae has generalized anxiety disorder. As Rocket Mortgage acknowledges, Efezokhae first sought reduced hours and a better work-life balance, and then permanent remote work and to be excused from using video during video call meetings as accommodations. (Doc. 51 at 11.) Accordingly, Rocket Mortgage provided accommodations by providing the transfer, the reduction in hours, and allowing him to go on leave pending the transfer. *See, e.g.*, *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999) (noting unpaid medical leave may be a reasonable accommodation). In response to Efezokhae's early 2021 requests, Rocket Mortgage also attempted to communicate and work with Efezokhae on finding accommodations, but he pushed back and refused to communicate at times. (Doc. 52-3 at 26–28.); *Allen v. Pac. Bell*, 348 F.3d 1113, 1115–16 (9th Cir. 2003) (concluding an employee's failure to participate in the interactive process may preclude a finding that the employer failed to fulfill its interactive duties). Efezokhae instructed Rocket Mortgage to rely on the medical recommendations for its "formal investigation," and that is exactly what it did in providing the transfer and temporary accommodations. (*See* Doc. 52-3 at 28.)

Regarding Efezokhae's later-requested accommodations, on its face, the permanency of the requested work-from-home status does not appear reasonable. *See, e.g.*, 29 C.F.R. § Pt. 1630, App. ("[T]he employer providing the accommodation has the ultimate discretion to choose between effective accommodations."). As alleged, Efezokhae was receiving ongoing treatment, and in his request acknowledged the length of the requested

accommodation was "was truly dependent on [his] progress in therapy and overall health," indicating that he anticipated his condition had some temporal limitation based on his treatment.  (*See* Doc. 52-4 at 3.)  His medical recommendation also indicated that his impairment was temporary.  (*See id.* at 7.)  Based on these facts, Rocket Mortgage's decision to allow Efezokhae to temporarily work from home status provided him with a reasonable accommodation, even though he preferred a permanent accommodation.  *See Zivkovic*, 302 F.3d at 1089.

Rocket Mortgage's denial of Efezokhae's request refrain from being on video during meetings was not improper.  An employer who fails to participate in the interactive process in good faith "will face liability '*if a reasonable accommodation would have been possible*.'"  *Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018).  "[T]here exists no stand-alone claim for failing to engage in the interactive process.  Rather, discrimination results from denying an available and reasonable accommodation." *Id.*  If an employer fails to engage in the interactive process, the burden shifts to the employer to prove the unavailability of a reasonable accommodation.  *Id.*  However, Rocket Mortgage, by engaging in an interactive process in requesting medical records and working with Efezokhae, did provide him a reasonable accommodation consistent with his doctor's recommendations, i.e., temporary remote status.   Additionally, he repeatedly made demands for various accommodations throughout his employment and accepted what Rocket Mortgage offered, only to move the goal post with subsequent requests.  Throughout that time, Rocket Mortgage consistently required medical evidence to support providing accommodations for his impairment, and when he would refuse to participate, relied on the medical recommendations to grant accommodations.  It is undisputed that there is zero evidence of any recommendation that Efezokhae refrain from participating on video.  (Doc. 52-2 at 30–32.)  Again, Efezokhae is not entitled to accommodation he prefers.  *See Zivkovic*, 302 F.3d at 1089.  Therefore, the Court finds that a requested accommodation to indefinitely participate via only audio during meetings in an entirely remote position is unreasonable.

1    Accordingly, Rocket Mortgage did not fail to provide reasonable accommodations

2    and is entitled to summary judgment on the claims.

3                    ii.    *Termination-Based Discrimination Claims*

4    Rocket Mortgage argues that at bottom Efezokhae has failed to prove discriminatory

5    conduct, and therefore, to the extent Efezokhae asserts claims beyond a failure to

6    accommodate, those claims fail.  (Doc. 51 at 13–14.)  Rocket Mortgage disclaims any

7    reliance on Efezokhae's disability in its termination decision.  (Doc. 51 at 13–24; Doc. 88

8    at 7–10.)  According to Rocket Mortgage, Efezokhae's allegations of being mocked and

9    humiliated are based on his own heightened sensitivities and factually unsupported.  (*Id.*

10   at 10–11, 13–14.)  It is not clear if Rocket Mortgage is arguing Efezokhae failed to establish

11   a *prima facie* case of discrimination or that Efezokhae failed to establish a presumption of

12   discrimination because it provided no legal standard to guide the inquiry and appears to

13   advance arguments applicable to both.  Regardless, as explained below, it is a distinction

14   without a difference.

15   Efezokhae argues the temporal proximity between his final accommodation request

16   and termination support finding that a genuine dispute of fact exists about Rocket

17   Mortgage's motives.  (Doc. 75 at 27–28.)  Efezokhae additionally argues that he was

18   subjected to increased scrutiny and hostility, and although there is a "scintilla of evidence

19   presented," the facts strongly demonstrate discriminatory intent.  (*Id.* at 28.)  Rocket

20   Mortgage replies that Efezokhae misrepresents the record and none his citations to the

21   record show actual harassment nor mocking.  (Doc. 88 at 4–5.)

22   To establish an ADA discrimination claim, a plaintiff must show that (1) he is

23   disabled; (2) he is a qualified individual in that he can perform the essential functions of

24   his job; and (3) he suffered an adverse employment action on the basis of his disability.

25   *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 988–90 (9th Cir. 2007).  If an employee

26   establishes a *prima facie* case, the burden shifts to the employer to provide a

27   nondiscriminatory reason.  *Mustafa v. Clark Cnty. Sch. Dist.*, 157 F.3d 1169, 1175 (9th

28   Cir. 1998).  If the employer disclaims any reliance on a discriminatory reason for taking

the employment action, the burden shifts back to the employee to show that the proffered reason serves a pretext for disability discrimination. *Id.* "[A] plaintiff can prove pretext either (1) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 849 (9th Cir. 2004) (cleaned up).

Rocket Mortgage cites to the record and Efezokhae's deposition testimony to refute any inference of discriminatory animus. (*See* Doc. 51 at 10–11; Doc. 52 at 5–6 ¶¶ 27–36.) In review of those records, the Court finds there is no direct or circumstantial evidence of threatening or mocking behavior by Rocket Mortgage. *See Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003), *as amended* (Jan. 2, 2004) ("Direct evidence is 'evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption.'" (citation omitted)). Those records tend to show miscommunications between Efezokhae and his supervisors in late February 2021, a chat from March 2021 where a supervisor inquired about one of Efezokhae's business decisions, and an email chain from September 28, 2021 where his one of his supervisors instructed him to follow the guidelines when servicing a client. (Doc. 52-4 at 14, 16–17, 19–23.) Efezokhae testified about perceiving his managers and supervisors as yelling and their behavior as mocking or condescending to infer that that they thought he was stupid. (*Id.* at 21, 23–24, 28, 36–37.) Aside from Efezokhae's termination, these instances of Rocket Mortgage's purported misconduct are not misconduct and do not give rise to an adverse employment action. *See, e.g.*, *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1112 (9th Cir. 2000) (finding that "increased criticism" does not constitute an adverse employment action); *Manatt v. Bank of Am., NA*, 339 F.3d 792, 798 (9th Cir. 2003) ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" (citation omitted)). And because Efezokhae has produced no direct evidence to suggest otherwise, he must proceed under the *McDonnel Douglas* framework to raise a presumption of discrimination.

1  *Vasquez*, 349 F.3d at 640.

2  Under the *McDonnell Douglas* framework, "unlawful discrimination is presumed if
3  the plaintiff can show that '(1) [he] belongs to a protected class, (2) [he] was performing
4  according to [his] employer's legitimate expectations, (3) [he] suffered an adverse
5  employment action, and (4) other employees with qualifications similar to [his] own were
6  treated more favorably.'" *Id.* at 640 n.3.  As Rocket Mortgage points out, Efezokhae has
7  failed to identify a single non-disabled or similarly situated employee that was treated more
8  favorably.  (*See* Doc. 51 at 14.)  "[I]ndividuals are similarly situated when they have similar
9  jobs and display similar conduct.  *Vasquez*, 349 F.3d at 641.  The evidence Efezokhae cites
10 to support that Rocket Mortgage discriminated against him does not raise a genuine dispute
11 of fact.  (*See* Doc. 75 at 5 (citing Doc. 75-1 at 6, 10, 12–14, 22, 27–28, 69–71, 73–77,
12 80–81; Doc. 75-2 at 3, 38, 41, 47, 53–54, 56, 58, 62–64).)  At most, Efezokhae has
13 produced screen captures of video calls with his supervisors or managers' cameras turned
14 on and off, showing some inconsistency on the necessity of being on camera, but that alone
15 is insufficient.  *See, e.g.*, *Vasquez*, 349 F.3d at 641 (noting employees in supervisory
16 positions are generally not similarly situated).  Additionally, Efezokhae admitted that he
17 was not aware of any employees who were allowed to permanently participate in meetings
18 without video.  (Doc. 52-2 at 38.)

19 With regards to his termination, Efezokhae has made no showing that similarly
20 situated employees who used an email signature to indicate a direct refusal to communicate
21 with clients over the phone were not terminated.  *See Vasquez*, 349 F.3d at 641 (noting the
22 problematic conduct of an employee is relevant to the inquiry); *see also Collings v.
23 Longview Fibre Co.*, 63 F.3d 828, 833 (9th Cir. 1995) (affirming summary judgment where
24 the employer terminated employees for their misconduct, rather than any alleged
25 disability).  On top of missing meetings and being uncooperative, Efezokhae refused to
26 perform a fundamental role in his job and cannot show he was performing according to
27 expectations when the undisputed evidence proves he refused to do so.

28 Therefore, Efezokhae has failed to establish a prima facie case of discrimination.

1    Even assuming he did based on his argument regarding temporal proximity of his

2    termination to his request for accommodations, his claim would fail because he has not and

3    cannot show on these facts that his insubordination was a pretext for discriminatory intent.

4    *See, e.g.*, *Vasquez*, 349 F.3d at 641 at 642 (concluding summary judgment was appropriate

5    where, assuming plaintiff set out a prima facie case, the plaintiff failed to put forward

6    substantial and specific evidence to attack the defendant's credibility as to its motives).  He

7    has failed to refute that he refused to perform one of his fundamental job duties.  Efezokhae

8    has also failed to produce evidence that Rocket Mortgage's reason for terminating him

9    lacks credibility.  Thus, the Court will grant summary judgment for Rocket Mortgage on

10   the of termination-based discrimination claims.

11                    3.   Efezokhae's State Law Wrongful Termination Claim

12           Efezokhae alleges that Rocket Mortgage violated the Arizona Employment

13   Protection Act ("AEPA") after it retaliated against him for reporting the purported racial

14   and disability discrimination to human resources.  (Doc. 1-7 at 96–97.)  Rocket Mortgage

15   argues the AEPA claim fails because Efezokhae was terminated for insubordination and

16   otherwise fails to show he engaged in a protected activity.  (Doc. 51 at 14–16.)

17           The AEPA permits wrongful termination claims when (1) a discharge is in violation

18   of an employment contract; (2) a discharge violates an Arizona statute; or (3) a discharge

19   is in retaliation for the employee's assertion of certain rights protected by state law.

20   *Guernsey v. Elko Wire Rope Inc.*, No. CV-21-00848-PHX-DJH, 2023 WL 5348567, at *2

21   (D. Ariz. Aug. 21, 2023).

22           Rocket Mortgage's briefing addresses only the third option.  (*See* Doc. 51 at 14–16

23   (citing Ariz. Rev. Stat. § 23-1501(A)(3)(c)(ii).)  However, Efezokhae premises his entire

24   claim on alleged state law violations under the ACRA for disability and race

25   discrimination.  (*See* Doc. 1-7 at 96–97.)  Although not argued by Rocket Mortgage,

26   Arizona Revised Statute § 23-1501(B) bars such a claim in the first place and is not

27   actionable.  *See, e.g.*, *Archer v. Partners in Recovery LLC*, No. CV-18-01885-PHX-DWL,

28   2019 WL 3253175, at *2–3 (D. Ariz. July 19, 2019) (finding that an AEPA claim premised

on ACRA violations is not actionable as a separate claim); *Guernsey*, 2023 WL 5348567, at *3–4 (finding § 23-1501(B) barred plaintiff's AEPA retaliation claim under Ariz. Rev. Stat. § 23-1501(A)(3)(c)(ii) because it was premised on Arizona's Fair Wages Act, which contains its own remedies for violations); *Baker v. Walgreens Ariz. Drug Co.*, No. CV-15-00342-PHX-JAT, 2016 WL 3181683, at *3 (D. Ariz. June 8, 2016), *aff'd*, 691 F. App'x 861 (9th Cir. 2017) (finding AEPA claims premised on ACRA claims are not actionable).

While it is not clear to the Court that Efezokhae premised his AEPA claim on anything beyond an ACRA violation, Rocket Mortgage is correct that Efezokhae has failed to establish that he was terminated on the basis of reporting general violations of state law. To prevail on a AEPA claim under § 23-1501(A)(3)(c)(ii), the plaintiff bears the burden of establishing either that the employer terminated his employment because he refused to violate Arizona law, or because he reasonably believed the employer violated Arizona law and reported it. *See Rowberry v. Wells Fargo Bank NA*, No. CV-14-01801-PHX-DLR, 2015 WL 7273136, at *4 (D. Ariz. Nov. 18, 2015). The record is void of any allegations beyond the aforementioned discrimination claims. Even so, to sustain the claim, an employee must prove the conduct was protected and that it was a substantial or motivating factor in the termination, and if so, the employer can escape liability by showing it would have taken the same action in the absence of the protected conduct. *Rowberry v. Wells Fargo Bank NA*, No. CV-14-01801-PHX-DLR, 2015 WL 7273136, at *5 (D. Ariz. Nov. 18, 2015). As previously discussed, Rocket Mortgage has made a showing that it terminated Efezokhae for insubordination, not based on discriminatory motives. Thus, Rocket Mortgage is entitled to summary judgement.

### D. After-Acquired Evidence Doctrine

Lastly, Rocket Mortgage dresses its summary judgment salad with an argument that the after-acquired evidence doctrine "precludes recovering on any" of Efezokhae's claims. (Doc. 52 at 17.) But Rocket Mortgage also posits that the after-acquired evidence doctrine would bar his claims and functionally preclude liability all together. (*See* Doc. 88 at 10 ("[Efezokhae] has no response to Rocket Mortgage's argument that his claims are barred

1    by the after-acquired evidence doctrine.").    A closer look, however, reveals Rocket

2    Mortgage misapplies this doctrine.

3        As Rocket Mortgage cites (*see id.* at 16–17), the after-acquired evidence doctrine

4    "precludes or limits an employee from receiving remedies for wrongful discharge if the

5    employer later 'discovers' evidence of wrongdoing that would have led to the employee's

6    termination had the employer known of the misconduct." *Rivera v. NIBCO, Inc.*, 364 F.3d

7    1057, 1070–71 (9th Cir. 2004) (citing *McKennon v. Nashville Banner Pub. Co.*, 513 U.S.

8    352, 360–63 (1995)).    The Ninth Circuit further explained "[a]n employer can avoid

9    backpay and other remedies by coming forward with after-acquired evidence of an

10    employee's misconduct, but only if it can prove by a preponderance of the evidence that it

11    would have fired the employee for that misconduct." *Id.* at 1071 (citation omitted); *see*

12    *also McKennon*, 513 U.S. at 361–62 (explaining the doctrine would bar front pay and

13    reinstatement remedies and limit recovery for "backpay from the date of the unlawful

14    discharge to the date the new information was discovered").

15        Courts in this district have found that generally "after-acquired evidence cannot

16    stand as an affirmative defense to employment discrimination under the ADA." *Burkhart*

17    *v. Intuit, Inc.*, No. CV-07-675-TUC-CKJ, 2009 WL 528603, at *12 (D. Ariz. Mar. 2, 2009)

18    (refusing to find an employee was not qualified based on after-acquired evidence because

19    it would bar recovery all together).    The doctrine simply has no bearing on establishing

20    discriminatory motives. *Montgomery v. Union Pac. R.R. Co.*, No. CV17-00201-TUC-RM,

21    2019 WL 1790281, at *2–3 (D. Ariz. Apr. 24, 2019) (noting the doctrine is "clearly not

22    relevant" to an employer's motives; *but see Anthony v. Trax Int'l Corp.*, 955 F.3d 1123,

23    1131 (9th Cir. 2020) (holding after-acquired evidence is relevant to rebut an employee's

24    claim he is a qualified individual).    Likewise, the doctrine is not a defense to a claim of

25    tortious wrongful termination under Arizona law, rather it limits the availability of

26    reinstatement, front pay, and some lost earnings but not other compensatory damages.

27    *O'Day v. McDonnell Douglas Helicopter Co.*, 959 P.2d 792, 797 (Ariz. 1998).

28        Thus, while after-acquired evidence may limit a plaintiff's remedies, it does not

serve as a basis for summary judgment.

**IV.    CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED granting** Rocket Mortgage's Motion for Summary Judgment (Doc. 51) with prejudice.

**IT IS FURTHER ORDERED granting in part** Rocket Mortgage's Motion to Strike (Doc. 80), and striking page 39, lines 24 through page 40, lines 21 of Plaintiff's Response (Doc. 75), and **denying in part** the remainder.

**IT IS FURTHER ORDERED granting** Rocket Mortgage's Motion to Strike (Doc. 90), and striking ECF Nos. 81, 82, 83, and 87.

**IT IS FURTHER ORDERED denying** Plaintiff's Motion Requesting Additional Discovery (Doc. 84) and Motion for Accommodations and Additional Time to Response (Doc. 85).

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment accordingly and terminate this case.

Dated this 15th day of January, 2025.

_____
Honorable Susan M. Brnovich
United States District Judge